## LANDY LINSTEAD *vs.* ANN GREEN.

1. A bequest, that, my negro woman C. be and go free at the age of thirty-six years old, *both she and her increase,* taken in connection with a similar bequest of freedom to her child, then living, entitles the mother and each of her afterborn children to their freedom, when each become thirty-six years old, and not before.

2. In construing a will, the court may transpose the words of it, so as to make them read in a manner conformable to what appears to be the general and predominating intention of the testator.

THIS is an appeal from Anne Arundel county court, in the case of a petition for freedom, filed 11th August 1851.

The appellee is the daughter of Caroline, named in the will of Ignatius Bright, and claims to be entitled to her freedom under that will. The said will contains the following clauses:

"I will and bequeath my negro woman Caroline, to be and go free at the age of thirty-six years old, both she and her increase, she being at this time seventeen years old.

"Item.—I will and bequeath my negro boy Joshua, son of

Linstead *vs.* Green.

said Caroline, to be and go free at the age of thirty-six years, he being at this time four months old."

A provision was made for the widow, but she was dead.

According to the testimony, the petitioner was born about the year 1830 or 1831. Caroline had other children, some older and some younger than the petitioner. Caroline, the mother, died about the year 1836 or 1837, before she arrived at the age of thirty-six. At the date of the will she had but one child, the boy Joshua, who is named therein. The testator owned Caroline, and died in possession of her. The will was executed 19th August 1823. A settlement in the orphans court was offered in evidence. Verdict being for the petitioner, the defendant appealed, and upon the exceptions taken, the following questions arise:

1st. Was Thomas W. Stinchcomb a competent witness? Upon his *voir dire* he testified, that he had not been paid by the petitioner, or any one for her, for his attendance as a witness; nor had he received any security for such payment, in any manner, by the petitioner, or any one for her, and that he did not expect to be paid at all for his attendance as a witness, unless the verdict was against the defendant, in which case he expected to be paid by the defendant, although there had been no promise or understanding between them to that effect.

2nd. Was the petitioner entitled to her freedom, although Caroline, her mother, did not live until she attained the age of thirty-six years?

3rd. Was the petitioner entitled to her freedom, until she attained the age of thirty-six years?

4th. To entitle the petitioner to her freedom, was it necessary for her to offer evidence of the distribution of the balance of the personal estate of the testator, or evidence that the widow abided by his will, or that the administrator *cum testamento annexo*, assented to the bequest of freedom to Caroline, and her increase?

This case was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

By *Hagner* and *Randall* for appellant, and *Miller* and *Worthington* for the appellee.

*Hagner,* for appellant, insisted, that the witness (Stinchcomb) had an interest in the event of the suit, and therefore was not a competent witness. For the general rule, see 1 *Green. on Ev.,* 386, '9. See 407, 419. See, also, 241. 7 *Gill,* 405. There was no chance of his being paid, unless, and by the aid of his testimony, she succeeds. This is to be considered a vested interest. No informer is a competent witness, unless he be made so by the statute. 2 *Hill, (S. C.,)* 445. 9 *Cowen,* 23. 3 *Blackf.,* 272. 7 *Halst.,* 240. 2 *McCord,* 375. 1 *Richardson,* 168. *Kirby,* 70.

*2nd Point.* What is the construction of the will? If the increase are not to be free until thirty-six years of age, then, to entitle them to freedom, Caroline must live till she is thirty-six years old. This is a condition precedent.

This bequest of freedom to the mother and her increase is a legacy, and subject to the rule of legacies. 6 *G.,* 388, *State vs. Dorsey.*

2 *Wms. on Ex'crs,* 767, how to determine whether a legacy be vested or contingent.

If the testator intended to benefit the children, he must have intended not to emancipate them, unless they had somebody to take care of them.

"At twenty-one," the legacy lapses, if the legatee should die before. 1 *Roper,* 378, 381. 6 *Tho. Monroe,* 51. 8 *Peters,* 220. 2 *Bibb,* 299.

Such conditions are to be construed with great strictness. 2 *Wms. on Ex'crs,* 790, *(marg. p.)* 1 *Roper,* 513, 414.

*3rd Point.* If in this I am wrong, then the children are to be free at thirty-six. Joshua is to be a slave until thirty-six, and the mother not to be free until thirty-six. Why give freedom to children, then unborn, before thirty-six.

An infant cannot be free, and the court will not, if it can be avoided, defeat the intent. There might be several children, who were but infants when Caroline died, or reached

the age of thirty-six. A bequest is not so to be construed as to make it a burthen. 2 *Pow. on Devises*, 377, *margin.*

*4th Point.* The only evidence of a settlement was an account passed, showing a balance in the hands of administrator. 6 *G.*, 301. 2 *H. & G.*, 1. The *onus* is upon the petitioner. 6 *G. & J.*, 136.

*5th Point.* There is no proof either that the widow did or did not renounce. She had a right to renounce the provision made in the will for her, and take the negro Caroline as a slave for life. 5 *H. & J.*, 59.

*6th Point.* There is no sufficient evidence of the assent of the administrator to the bequest of freedom to Caroline, or her increase. *Sutton vs. Crain*, 10 *G. & J.*, 458. *Williams on Ex'crs*, 843, '4, 847. The case 10 *G. & J.*, is much such a case as this.

*Miller* for appellee.

As to the competency of the witness: *Green. on Ev.*, sec. 387. It must be real, and not merely apprehended. Sec. 320 states the true test. See 1 *S. & R.*, 32. 7 *S. & R.*, 312. 1 *Wend.*, 326. 4 *S. & R.*, 226.

As to the construction of the will, the testator's intent was, that the children should go with the mother and constitute one family. 6 *Tho. B. Munroe*, 80, *Hart vs. Fanny Ann.*

Does the death of the mother before thirty-six, deprive the increase of their freedom? 4 *J. J.*, *Marshall*, 371, *Fanny against Bryant.*

He gave a reference to 1*st G.*, 395, to show that a bequest of negroes, to be free at a particular age, is not a legacy. If it be a legacy, is it a contingent legacy? The woman is benefitted; she cannot be sold out of the State; she cannot be sold without a bill of sale.

It is a vested right, to be enjoyed *in futuro*. 3 *Humph.*, *(Kent'y,)* 255. 6 *Yerger*, 227.

Does the word "at," imply a condition or contingency? See 5 *G. & J.*, 96, *Hill vs. Hill.* "In case of," not meaning "at or upon."

*When,* does not always imply a condition precedent. 1 *Jerman,* 734, 736.

It is not necessary to show assets, in order to make out a *prima facie* case. 7 *G. & J.,* 105, *Allen vs. Sharpe.* 6 *Gill,* 308, *Cornish vs. Wilson.* 7 *G. & J.,* 127.

In the absence of proof, the law will not presume that an executor has failed to perform his duty, and his neglect cannot prejudice the claim of the petitioner.

The widow is bound to renounce. 1798, sub ch. 13, sec. 1. If any renunciation, it is upon record, and the adverse party ought to produce it.

Is evidence of the assent of the executor necessary? If an executor refuses his assent, a petition may be filed against him, and he is in that way compelled to do the duty which is imposed upon him by the will. A legatee may sue upon the bond of the executor, although he refuses his assent to the legacy.

*Worthington,* on the same side, was told that he need not argue the question relative to the competency of the witness.

The third prayer in fact says, that the evidence in the record is not legal evidence of any of the matters stated in the prayer.

As to the construction of the will: Why is the name of any legatee mentioned in the will? To ascertain when freedom is to be enjoyed.

These are independent bequests to the mother, and also to the children. The case of *State vs. Dorsey,* was decided upon a particular act of Assembly, and has no application to this case. The question in that case was not, whether the legacy was a vested or contingent one.

A negro to be free, *in futuro,* is in a different condition from that in which he was before the deed or will took effect.

He referred to 4 *Dev. & Bat.,* 401.

*Randall,* in conclusion, relied upon the authorities already cited by his colleague.

Linstead *vs.* Green.

It is conceded, that Caroline must be thirty-six before she is entitled to her freedom, and so must Joshua. Surely her issue cannot be free before Caroline.

Both she and her increase, at the age of thirty-six years. These are the words to be supplied. 2 *Wms. on Ex'crs, p.* 715, *(margin,)* as to the transposition of words.

Caroline and Joshua not to be free until thirty-six. Can it be supposed that it was intended to free others, when only one or two years old, and thus deprive them of their freedom, because not old enough to support himself.

Not at *her* age of thirty-six, but at *the* age of thirty-six.

7 *Rand.*, 244. A slave until he is entitled to the actual enjoyment of his freedom. See, also, 6 *H. & J., Hamilton vs. Craggs.*

The petitioner ought to have proved that their manumission was not in prejudice of creditors, and should have adduced some evidence, other than that offered, that the estate had been settled.

Le Grand, C. J., delivered the opinion of the court.

There have been many questions of importance presented and discussed with ability by the respective counsel in this case, which, in the view we have, it is unnecessary for us to notice.

The petitioner claims her freedom under the will of Ignatius Bright. The items under which the claim is preferred are as follows:

"Item.—I will and bequeath my negro woman Caroline, to be and go free at the age of thirty-six years old, both she and her increase, she being at this time seventeen years old.

"Item.—I will and bequeath my negro boy Joshua, son of said Caroline, to be and go free at the age of thirty-six years he being at this time four months old."

The petitioner is a child of the negro woman Caroline, and was not at the time of the filing of her petition, nor is she now, thirty-six years old.

The question then is, can the petitioner, so predicamented,

be entitled under the will of Ignatius Bright, to her freedom? We think not.

The rule of construction which obtains in all cases is, that the intention of the testator must prevail, unless it be opposed to some principle of, or to the policy of the law. This being so, we are then to determine what was the intention of the testator, in this respect, as displayed in that portion of his will which we have given. It is contended on behalf of the petitioner that, the testator designed to manumit his slave Caroline when she should attain the age of thirty-six years, and her issue when the period arrived at which Caroline would be thirty-six years old. To this view we cannot assent. Did the first item which we have quoted stand alone, there might be room for ingenious, philological discussion as to the intention of the testator; but, we think, when it is considered in connection with the succeeding clause; the will of the testator becomes manifest, and is, that he designed to manumit Caroline when she should become thirty-six years old, and, also, to manumit each and every of her children when they should respectively attain the same age, and not before. We are aware that this interpretation of the language is deemed opposed to that given in *Hart vs. Fanny Ann*, 6 *Monroe*, 49, a case, in its general character, much resembling the one before us. With all respect for the judgment of that learned court, we cannot admit its authority in this instance.

In the case before us, wherever Caroline or her child Joshua are mentioned by name, the age of thirty-six years is clearly and explicitly designated as the age at which each of them is to be entitled to her or his freedom, and from this circumstance but one conclusion can be properly drawn, and that is, that he had fixed in his mind the age of thirty-six years as the proper age at which each of his slaves should go free. At the time of the making of his will, the proof shows Caroline had but one child, Joshua, who was then four months old, and the testator, in framing his will, deals *eo nomine* with all his slaves then *in esse*, designating, in language beyond all dispute, the age of thirty-six years as that at which each of

them should be entitled to freedom. In the absence of all supposable reason for a different intention in regard to children thereafter to be born, we are forced to give such a construction to the first item of the will which we have quoted, as will conform it to what is the manifest intention of the testator in regard to Caroline and her child, living at the time the will was proclaimed. In doing this, we but indulge the privilege which, it is admitted on all sides, belongs to the court, to transpose the words of the will, so as to make them read in a manner conformable to what appears to be the general and predominating intention of the testator. All the difficulty of interpretation which the first item presents, grows out of the location in it of the words, "*both she and her increase.*" Situated as they are in the sentence, the latter clearly is susceptible of two meanings, of the correctness of each of which much may be said; but by transposing these words, so as to introduce them after the word "Caroline," the whole instrument is made consonant in all its parts, and the wish of the testator effectuated. These words, thus transposed, would make the clause read as follows:—"Item. I will and bequeath my negro woman Caroline, both she and her increase, to be and go free at the age of thirty-six years old, she being at this time seventeen years old."

In thus translating the will of Ignatius Bright, we give to it not only the meaning of the testator, as we understand it, but also observe the policy of the State as indicated in its legislation. The proof in the cause shows, that Caroline had other children than the petitioner and Joshua. It is but fair to suppose, that the testator contemplated that Caroline would have children up to the period fixed for her manumission, and it is equally just to suppose, that in regard to the children born within a period near to the time designated for her manumission, that he did not design to cast them unprotected upon the world. The 13th section of the act of 1796, ch. 67, forbids the manumission of any slave who shall not be, at the time of manumission, "*able to work and gain a sufficient maintenance and livelihood;* "and the Court of Appeals, in

12      v.2

*Hamilton vs. Cragg*, 6 *Harr. & John.*, 18, have recognised the binding force of these words of inhibition on the acts of testators. We are clearly of opinion, that the petitioner is not now, nor was she entitled to her freedom at the time of the filing of her petition. And from this it necessarily follows, that we dissent from the circuit court's ruling in regard to defendant's second prayer. This view dispenses with the necessity of our noticing the other points.

*Judgment reversed and no procedendo awarded.*