## WILLIAM BOYD *vs.* DANIEL McCANN.

A notice of the dissolution of a partnership, published in a newspaper, though not, *per se*, sufficient to show either that the dissolution took place on a certain day *prior* to the publication, or that parties dealing with the firm, and others, had notice of the dissolution on that day, is yet admissible in evidence as a *circumstance tending* to *show* these facts.

A prayer that if the jury find that the plaintiff "received the note" from a *bona fide* holder, "without notice of the dissolution of said partnership," &c., is defective in *assuming* the making of the note, and the existence of the partnership.

It is no defence or bar to the title of the holder of a negotiable promissory note, that he was aware of some infirmity in the paper, *provided* he received it, at or before maturity, from a *prior bona fide* holder, for value; the right of the party so acquiring it, is the right of *him from whom it was obtained.*

The mere certificate of the editors of a newspaper, that notice of the dissolution of a partnership had been published in it, without any proof that the party sought to be affected with such notice, took or read the paper, is not sufficient to affect such party with notice.

The fact that a promissory note is payable to *blank* order, authorises the holder to fill it up, at any time, with his own name as payee.

The fact that the *firm name* was kept over the door of the place of business after *dissolution* of the partnership, is not, *of itself,* sufficient to authorise the holder of a note signed in the firm name to recover upon it.

APPEAL from the Court of Common Pleas for Baltimore city.

*Assumpsit* brought by the appellee against the appellant and William Rogers, partners under the name of "Rogers & Boyd," upon a promissory note for $152.59, dated the 19th of January 1852, payable originally to blank order, four months after date, and signed with the firm name. Rogers failed to appear, and a judgment was rendered against him by default. Boyd appeared and plead *non assumpsit.*

· *Exception.* The proof in the case is fully stated in the opinion of this court. The prayers asked by the plaintiff were:

1st. That if the jury shall find from all the evidence in the case, that the plaintiff received the note sued on from Wylie & Wilson, or from Ijams, their agent, and that Wylie & Wilson held the note *bona fide* and for valuable consideration, and without notice of any improper practice on the part of said

Rogers, and without notice of a dissolution of said partnership, then the plaintiff is entitled to recover, though the jury may also find that the plaintiff had notice of the dissolution of the said partnership prior to his purchase of the note.

2nd. That if the jury find, from the evidence, that the name of "Rogers & Boyd" remained over the door of the establishment of the late firm of "Rogers & Boyd," after the publication of the notice of dissolution of said partnership, then the plaintiff is, nevertheless, entitled to recover.

The prayers asked by the defendant were:

1st. That if the jury believe, from the testimony, that the plaintiff came into possession of the note in controversy after notice that the firm of "Rogers & Boyd" had been dissolved, was published in the newspapers in Baltimore, he is not entitled to recover.

2nd. That the plaintiff having declared, on the note as being made in his favor by Rogers & Boyd, any testimony on his part to show that the note was not made in his favor, but in favor of another party, from whom he purchased it, is inadmissible.

3rd. That if the jury believe, from the testimony in the case, that the plaintiff purchased the note under such circumstances as were calculated to raise a suspicion in his mind of its validity, and were calculated to put him on inquiry, then he is not entitled to recover as against Boyd.

The court (MARSHALL, J.,) granted the first prayer of the plaintiff, and rejected all the others on both sides. The record shows that *several* exceptions to each of the adverse rulings of the court were *noted* by each party in the course of the trial, and but *one* signature and seal of the judge at the conclusion, which is as follows:

"And the counsel for the plaintiff and defendant prayed the court to sign and seal their several bills of exceptions, as set forth in the foregoing bill, as they appear on either side respectively; which is hereby signed and sealed this 22nd day of February 1853."

The verdict and judgment were in favor of the plaintiff, and the defendant, Boyd, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, and TUCK, J.

*E. R. Sprague* for the appellant, argued:

1st. That the court below properly overruled the plaintiff's objection to the certificate of the editors of the "American" newspaper, and the notice of dissolution of the partnership appended thereto. The objection is to the admissibility of this evidence, upon the ground " that the right to recover upon the note was not affected by this notice, the plaintiff having received the note from a *bona fide* holder, without notice, for value." It was certainly competent for us to prove that Wylie & Wilson, the parties from whom the plaintiff purchased the note, had *knowledge* of the fact of the dissolution of the partnership *when they received the note*, and the evidence objected to was *clearly one step* in the order of such proof, a *circumstance tending* to show that fact, and was therefore admissible. 7 *Md. Rep.*, 582, *Pegg vs. Warford.*

2nd. That the court erred in admitting the testimony of Wilson, and that offered by the defendant, to show that the note was given for a fraudulent purpose, or for the private benefit of Rogers, and also in its rulings upon the several prayers: 1st, because the notice of the dissolution of the co-partnership, published in the newspaper on the 23rd of January 1852, was a sufficient notice to bind the plaintiff; 2nd, because the plaintiff having purchased the note *after* he had notice that the co-partnership of Rogers & Boyd had been dissolved *before* the note was made, is not entitled to recover thereon as against Boyd; and 3rd, because the plaintiff's *first* prayer, which was granted by the court, is defective in *form*. It *assumes* the due execution of the note, and the existence of the partnership of Rogers & Boyd at the date of the note, which were *facts to be found by the jury.* 2 *Gill*, 426, *Charleston Ins. Co. vs. Corner.* 2 *Md. Rep.*, 75, *Brown vs. Ellicott.* 11 *G. & J.*, 479, *Ragan vs. Gaither.*

*James Malcolm* for the appellee, argued, that the court below was right in granting the first prayer of the plaintiff, and

in rejecting those of the defendant, and erred in rejecting the second prayer of the plaintiff, and also in admitting the evidence of notice of dissolution:

1st. Because if the plaintiff received the note from Wylie & Wilson, and they were *bona fide* holders, without notice, for a valuable consideration, he held the note under *their title*, and if they were entitled to recover, so would the plaintiff be, even if he had notice of the object of Rogers in giving the note of the firm for his private purposes, of which there is no proof. *Story on Prom. Notes*, secs. 72, 191. *Byles on Bills*, 37. 6 *Md. Rep.*, 9, *Manning, Stimpson & Co., vs. Hays*.

2nd. Because the note being attacked by the testimony on the part of the defendant, the plaintiff had a right to protect himself under the title of a *bona fide* holder without notice, and, therefore, the testimony of Wilson was admissible; and, besides, there is no testimony to show that the plaintiff had any notice of the dissolution, and because there was no evidence tending to show suspicious circumstances surrounding the note, or to put the party upon inquiry, the note being dated prior to the notice of dissolution having been published. *Story on Prom. Notes*, secs. 191 to 197. 3 *G. & J.*, 369, *Penn & Flack, vs. Cooley*.

3rd. Because there was no legal evidence shown in the record of any notice ever having been published of the dissolution of the partnership. *Story on Part.*, secs. 160 to 162. *Byles on Bills*, 38.

Le Grand, C. J., delivered the opinion of this court.

This action was brought by the appellee against the appellant and William Rogers, partners under the name of Rogers & Boyd, to recover the amount of a promissory note for $152.59, dated the 19th day of January 1852, payable four months after the date thereof. The plaintiff proved the signature to be in the hand-writing of Rogers, one of the partners, and that William Rogers and William Boyd were partners, and that the names of both were, at the date of the note, and still are, over the door of the place of business of the late firm, on Baltimore street. He further proved, that the note was sold to the

16      v.10

plaintiff by W. H. Ijams, a note broker, and that the note was in blank (as to the payee's name) at the time of the sale, and that he sold it as the agent of Wylie & Wilson, a house doing business in the city of Baltimore. It was sold to the appellee on the 11th day of February 1852, for some "seventy odd dollars," and his name inserted as payee.

The defendant offered to prove, by an advertisement, dated the 1st day of January 1852, but which was not *published* until the 23rd day of the same month, that the firm had been dissolved upon the first day of it. To this the plaintiff objected, but the court overruled the objection, and in doing so, we think, acted correctly. Although, as will be seen hereafter, the advertisement, *per se*, was not sufficient to show either that the dissolution took place on the first day of the month, or that either Wylie & Wilson, or McCann, had knowledge of the fact, yet it was a circumstance tending in that direction, and which, if it had been followed up with other evidence, might have been sufficient to bring notice home to the plaintiff.

The plaintiff then offered to prove, by Wilson, one of the firm of Wylie & Wilson, that he had received the note sued on from Rogers, of the firm of Rogers & Boyd, *upon the day of its date*, in renewal of one which was due from Rogers & Boyd, and that he had no knowledge of the dissolution of the co-partnership, nor of anything affecting the note, or that it was to be applied to Rogers' private purposes. The defendant then offered to prove that it was given for the private purposes of Rogers, *but without bringing the knowledge home to either the plaintiff or to Wylie & Wilson, from whom he obtained it*. The plaintiff objected to the proposed testimony, and the court sustained the objection. The propriety of this ruling will be seen where the law governing case is applied to the respective prayers offered by the plaintiff and defendant.

The plaintiff asked two instructions from the court, the first of which was granted, and the other rejected. The first prayer was defective in *form*, and, therefore, improperly granted. By assuming their existence, it took away from the jury the finding of the making of the note, and the existence of the partnership. Although the proof was all one way, neverthe-

less it was for the jury to pass upon it. In the case of the *Charleston Insurance & Trust Co. vs. Corner*, 2 *Gill*, 426, 427, the court say: "Doubtless the jury would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance that it is all on one side, does not authorize the court to direct the jury that it proves the fact. They have the power to refuse their credit, and no action of the court should control the exercise of their admitted right to weigh the credibility of evidence." On the same point see *Brown vs. Ellicott*, 2 *Md. Rep.*, 82. *Ragan vs. Gaither*, 11 *Gill & John.*, 479. Independently of the objection to which we have referred, the prayer stated the law correctly.

If the Messrs. Wylie & Wilson took a good title to the note, then it was competent to them to dispose of it to one who might be aware of some infirmity in the paper. The right of the party so acquiring it, is the right of those from whom it was obtained. If this were not so, the note would have been valueless in the hands of Wylie & Wilson, *bona fide* holders without notice. *Story*, in *section* 191 of his work on *Promissory Notes*, thus states the rule: "The partial or total failure of consideration, or even fraud between the antecedent parties, will be no defence or bar to the title of a *bona fide* holder of the note, for a valuable consideration, at or before it becomes due, without notice of any infirmity therein. The same rule will apply, although the present holder has such notice, if he yet derives a title to the note from a prior *bona fide* holder for value. The doctrine, in both its parts, is indispensable to the security and circulation of negotiable instruments; and it is founded on the most comprehensive and liberal principles of public policy. No third person could otherwise safely purchase any negotiable instrument, for his title might be completely overturned by some latent defect of this sort, of which he could not have any adequate means of knowledge," &c., &c.

The doctrine was carried much farther, by the late Court of Appeals, in a case very fully discussed by counsel, and considered by the court, but which has not been reported.

In the case of the *Merchants Bank of Baltimore, vs. The*

*President, Directors & Company of the Farmers Bank of Virginia,* the facts were as follows: S. drew a check on the bank in Virginia, which was endorsed "good" by O., the teller of said bank, S. having no funds there to meet it. This was in June; in December following, S. passed it as security to the Merchants Bank for a loan. At this time the Merchants Bank had not any notice of any defect in the check, or its endorsement. In January S. failed; the check endorsed good, which he had deposited with the Merchants Bank, was for a larger sum than that which he had borrowed, but being indebted to Mr. Cochrane, of Washington, and urged by the latter to pay him, he proposed that if Cochrane would settle with the Merchants Bank the amount due to it by S., he would give an order for the check in favor of Cochrane, which was accordingly done. On the 25th of January, Sherrod, the cashier of the Virginia Bank, informed Sprigg, the cashier of the Merchants Bank, that Orrick had fraudulently endorsed the check "good," and that S. had no funds to meet it at the time it was so endorsed. The arrangement by which the debt of S. to the Merchants Bank was settled, was not consummated until the 28th day of January; it, therefore, is apparent that the Merchants Bank had full notice of the fraudulent character of the transaction when it passed the check to Cochrane; the latter, however, had not when he acquired it. The Merchants Bank subsequently obtained possession of the check, and, on the strength of the title of Cochrane, notwithstanding its own knowledge, was held entitled to recover.

It is shown that Rogers & Boyd had had dealings with the Messrs. Wylie & Wilson prior to the date of the note sued on. There is no evidence they ever had any with McCann. The publication, in the newspapers, of the dissolution of the copartnership, was not until after the title of Wylie & Wilson was perfected. There was no notice, as shown by the testimony of Wilson, given to his firm of the dissolution, nor is there any evidence McCann had any. The latter is sought to be charged with notice because of the publication in the "Baltimore American" newspaper. This cannot be done, it not having been shown, except by the certificate of the pub-

lishers of that paper, that the notice of dissolution had appeared in it, nor that McCann took or read the paper. See *Byles on Bills, edition of 1856, marginal pages, 35, 36 and 37,* and the authorities there collected.

These views dispose of the prayers offered on the part of the defendant. They show that the title of Wylie & Wilson being good, McCann had the right to repose upon it. The fact that the note was in blank, authorized the plaintiff, at any time, to fill it up with his own name as payee. We think the court properly rejected the plaintiff's second prayer. It rests on the single fact, that if the jury should find the names of Rogers & Boyd were kept over the door after the dissolution of the co-partnership, then the plaintiff was entitled to recover. This circumstance, apart from all others, manifestly was not sufficient to authorize the recovery of the plaintiff.

*Judgment reversed and procedendo awarded.*