## JACOB HAMBURGER *vs.* PETER S. MILLER.

*When parol Evidence is admissible to show under what circumstances, and for what purpose, the Endorsement of a note was made—Question as to Right of action by the holder of a promissory note against an Endorser.*

In an action by the holder of negotiable paper against the immediate endorser, the title of no innocent third party intervening, it is always competent to the defendant, to show by parol evidence either the want or failure of consideration, as between himself and the plaintiff, or that the endorsement was procured by fraud, or that it was made upon some special trust, or for a special purpose, as to an agent to enable him to use the paper, or the money in some particular way, or to make collection, or have the paper discounted for the benefit of the principal; or that the note was endorsed and delivered to the plaintiff to be used only upon some express condition that has not been complied with. In these and similar instances, the parol evidence is admitted to show the absence of any valid or sufficient consideration for the alleged liability of the defendant to the plaintiff, and its admission violates no principle established for the protection of third persons, as *bona fide* holders of negotiable paper.

The promissory note of a Building Association, signed by the president, secretary, treasurer and two directors, and endorsed by the payee, was left with H. as the treasurer of the corporation, with the understanding that it should be discounted, and after deducting certain charges due the Association, the balance of the proceeds should be paid to the payee of the note. M. who had been in the habit of procuring notes of a similar character to be discounted at the instance of H. for a certain commission, was applied to by H. to get this note discounted, and for that purpose it was placed in his hands, without any other endorsement than that of the payee. Finding some difficulty in procuring discount of the note, M. returned to H. and informed him that it was necessary that he should put his name on the note in order, as H. testified, to his receiving the money, the product of the discount, and for that purpose alone; but M. testified that the endorsement was made to give additional security to the note. H. endorsed the note, and it was again placed in the hands of M. to be negotiated. M. without any endorsement of his own passed the note to A., and the amount which he

received from A. he paid over to H. less a commission of one per cent. It appeared that the money obtained from A. was not obtained by regular discount and upon the credit of the note; but M. pledged his own individual responsibility for the money, and the note was passed as collateral security only. The money not being paid at the maturity of the note, the note was duly protested for non-payment and notice given the endorsers. After this, instead of bringing suit against the parties to the note, suit was brought by A. against M. on his separate undertaking for the repayment of the money, and judgment being recovered for the amount he paid it, and the note was returned to him through the attorney of A. Thereupon an action on the note was brought by M. against H. to recover on his endorsement. H. denied his liability. HELD:

That if the defendant endorsed the note for the purpose of giving it additional credit, and thus facilitating its negotiation, and not for the simple purpose of enabling him to receive the money, the plaintiff's right of action would be good as against the defendant, as well as against the maker and first endorser.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the following prayers:

1. If the jury find from the evidence that the instrument sued on was made by the Liberty Perpetual Building Association, No. 3, a body corporate, and drawn to the order of Conrad Meise, and by him endorsed, for the purpose of having the same discounted; and shall further find, that instruments of a similar character, issued by the same Association, were regarded and treated by the commercial community at large as negotiable paper, then said instrument was a promissory note, and all the rights and liabilities of commercial negotiable paper attached thereto.

4. If the jury shall find the facts set out in the first prayer, and shall further find from the evidence, that the note sued on was made by the Liberty Perpetual Building Association, No. 3, and endorsed by Conrad Meise, and in this condition was handed by the defendant to the plain-

tiff, for the purpose of having the same discounted; that plaintiff, some days afterward, informed defendant that he would not get the note discounted, unless he (the defendant) would guarantee the same, and that defendant then said he would guarantee said note, or words to that effect, and that he then and there did write his name on the back thereof; that plaintiff procured the money for said note and paid the same to the defendant, and that, at the maturity of said note, it was presented to the defendant, as treasurer of said Building Association, for payment and was dishonored, and notice was stated in the protest; and that since said instrument became due, it came into the possession of the plaintiff as the owner and holder thereof, then he is entitled to recover.

The following prayers were submitted by the defendant:

1. That if the jury shall find from the evidence that the defendant, Jacob Hamburger, endorsed the note sued upon under the following circumstances, viz., the note being originally issued by the Liberty Perpetual Building Association, No. 3, to the order of Conrad Meise, with the understanding that the said Association should get the said note discounted, and pay the proceeds thereof to the said Conrad Meise, less certain charges due by him to them; and the said Jacob Hamburger, being an officer of said Association, placed his name upon the back of said note, that the said money might be paid to him to divide as agreed upon between the said Association and said Meise; that the said Hamburger, acting for said Association, employed the said Peter S. Miller to get the said note discounted; that the said Peter S. Miller passed the said note to Eliza G. Aberle, with knowledge of these facts, and was paid by the said Association therefor; and shall further find that the said Peter S. Miller gave his individual guarantee to the said Eliza G. Aberle, at the transfer of said note to her; that the said Aberle recovered the amount of the said note from the said Miller by an

action in the Circuit Court for Howard County, upon said guarantee, and that upon payment of amount of the verdict rendered by said Court, in said suit, after the said note had matured, and without any other payment or consideration, the said Eliza G. Aberle transferred the said note to the said Miller, then the said Peter S. Miller is not a *bona fide* purchaser or holder without notice, and their verdict must be for the defendant.

2. That the payment by Peter S. Miller, the plaintiff in this action, to Eliza G. Aberle, of the amount of the verdict rendered by the Circuit Court for Howard County, as set forth in the record in evidence, is not a consideration for the transfer of the note sued on in this action, to the said Peter S. Miller.

The Court, (GAREY, J.,) granted the plaintiff's prayers and rejected those of the defendant. The defendant excepted to the ruling of the Court. The judgment being for the plaintiff, the defendant appealed.

The cause was submitted to BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J.

*S. S. Pleasants* and *Fielder C. Slingluff*, for the appellant.

It is plain from the appellee's own showing, that the guarantee was not an original undertaking. It was not made at the same time the note was, but some ten days afterwards. It was a collateral undertaking to pay the debt of another, viz , of the Building Association, and in order to recover, it is necessary—1st. To prove a distinct consideration; 2nd. The guarantee must be in writing; 3rd. The consideration must be expressed in writing.

Where the guarantee is original, the consideration can be gathered from the writing, but where it is collateral, this rule does not hold—it must be expressed. *Aldridge & Higdon vs. Turner*, 1 *G. & J.*, 409 ; *Wyman vs. Gray,*

7 *H. & J.*, 409 ; *Elliott vs. Giese*, 7 *H. & J.*, 457 ; *Nabb vs. Koontz*, 17 *Md.*, 287 ; *Elder vs. Warfield*, 7 *H. & J.*, 392, &c. ; *Wain vs. Walters*, 5 *East*, 10 ; *Ecker vs. Bohn*, 45 *Md.*, 278.

The Court below erred in refusing the appellant's first prayer.

While it is true that parol evidence is not admissible to qualify or vary a written document, yet it is admissible to show that the document was never intended to operate at all. *Clever vs. Kirkman*, 24 *Weekly Reporter*, 159 ; *Pyne vs. Campbell*, 6 *E. & B.*, 370 ; *Rogers vs. Hadley*, 2 *H. & C.*, 227 ; *Wake vs. Harrop*, 6 *H. & N.*, 768.

It is competent for an endorser, as between immediate parties, to show that he put his name on a note for a specific purpose. *Ricketts & Whittington vs. Pendleton,* 14 *Md.*, 320 ; 1 *Daniel's Nego. Inst.*, sec. 721.

The appellee was employed to sell this note, with others. He was the agent, or broker, of the Building Association. His employment, according to his own testimony, was for this purpose, and for no other ; and in getting Hamburger to give the guarantee, he disclosed to him that he had a customer for the note, if he (Hamburger) would guarantee its payment.

A distinct original undertaking between them, independent of the note, could not vest such a title in the appellee as to enable him to sue the appellant under all the facts in the case. By the peculiar liability he assumed in discounting the note—a risk undertaken beyond the scope of his duty as agent, and for his own benefit, to secure a commission—while it is doubtful if he has even an equitable action for the money laid out by him for the maker of the note, against said maker, he certainly could not be viewed, as to the appellant, as a *bona fide* purchaser for value, without notice, nor have any claim against one in no way responsible for his undertaking and risk, who, to his own

knowledge, did not profit a farthing by the whole transaction.

*William A. Hammond*, for the appellee.

The exceptions arise entirely upon the prayers. The plaintiff's first prayer was not seriously disputed, and is exactly in accord with the latest decisions of this Court. *Jackson and Wife vs. Myers Brothers*, 43 *Md.*, 452 ; *Muth vs. Dolfield*, 43 *Md.*, 466.

The plaintiff's other prayer marked "four," was properly granted, and those of the defendant rejected, because

1st. Hamburger was not an accommodation endorser, and there was no failure of consideration as to him. He endorsed for the purpose of getting the money, and it was actually paid into his hands. What he did with it afterwards is not material. He wanted the money, and got it by means of his endorsement. What better consideration could he have?

2nd. But even if he were an accommodation endorser, there is no question but that Mrs. Aberle became the *bona fide* holder of the note for value before maturity. She had it properly protested, and *her* rights as against the defendant became thereby absolutely fixed, and any subsequent holder succeeded to all those rights unimpaired. 1 *Daniel on Neg. Inst's*, 541 ; *Ellicott vs. Martin, Love & Co.*, 6 *Md.*, 509 ; *Renwick vs. Williams*, 2 *Md.*, 356.

If the defendant's endorsement had been obtained by fraud, his liability, once fixed to Mrs. Aberle, followed the note, and her title enured to the benefit of any subsequent holder, even though such holder had knowledge of the fraud. *Story on Prom. Notes*, 225 ; *Boyd vs. McCann*, 10 *Md.*, 118, 124 ; *Woodman vs. Churchill*, 52 *Maine*, 58 ; *Thompson vs. Shepherd*, 12 *Met.*, 311 ; *Bassett vs. Avery*, 15 *Ohio St.*, 309 ; *Roberts vs. Lane*, 64 *Maine*, 108.

*A fortiori*, mere knowledge that the defendant was an accommodation endorser would not prevent the plaintiff

from recovering.    *Renwick vs. Williams,* 2 *Md.,* 356 ;
*Maitland vs. Citizens' Bank,* 40 *Md.,* 540.

Both the defendant's prayers were especially defective,
because they assert the. necessity of a valuable considera-
tion for the transfer of the note from Mrs. Aberle to Mil-
ler, whereas " Courts will never inquire into the right of
possession, unless on an allegation of *mala fides."   Kunkel
vs. Spooner,* 9 *Md.,* 475 ; *Ellicott vs. Martin, &c.,* 6 *Md.,*
516 ; *Whiteford vs. Burckmyer, &c.,* 1 *Gill,* 145.

But even if a consideration were necessary, surely the
payment of the judgment to Mrs. Aberle was all that
could be required.    *Wharton vs. Callan,* 2 *Gill,* 173.

The plaintiff's prayer marked four was much more favor-
able to the defendant than he was entitled to demand, and
this Court will not reverse on account of a defective
instruction, where it can see from the record that the
appellee rightly has the judgment.    *Condon vs. Pearce,*
43 *Md.,* 96.

ALVEY, J., delivered the opinion of the Court.

The note sued on in this case was made by the Building
Association on the 22nd of May, 1872, payable to Conrad
Meise, or order, twelve months after date.    It is in the
ordinary form of a promissory note, and was signed by the
President, Secretary, Treasurer, and two directors of the
Company.    It appears to have had the impress of the cor-
porate seal affixed at the foot of the note, but there is no
reference made to the seal in any part of the instrument
itself, and there is nothing appearing to indicate the pur-
pose of affixing the seal.    The note was indorsed in blank
by the payee, and also by the defendant, Hamburger ;
and not being paid at maturity, it was protested for non-
payment.

The note, notwithstanding the mark of the seal affixed,
must be taken as a negotiable promissory note, and that,
too, without regard to extrinsic facts.    It was manifestly

issued as a promissory note and was intended to be discounted for the benefit of the payee. Without negotiable quality it would not have subserved the purpose for which it was made. Upon successful negotiation of the note the payee was made to depend for the money for which he gave the Building Association a mortgage on his house.

The question of the liability of the defendant on his indorsement was raised by prayers offered in the Court below, and by the ruling thereon, the plaintiff obtained a verdict and judgment for the amount of the note.

The defence relied on by the defendant is, that he indorsed the note for a special purpose, and that such indorsement was made by him without consideration, to the knowledge of the plaintiff. And for the purpose of showing under what circumstances the indorsement was made, and the note placed in the hands of the plaintiff to be discounted, and in what manner the note was used by the plaintiff to raise the money thereon, and the way in which it again came to the possession of the plaintiff, both parties were examined as witnesses ; and, with a material discrepancy in their testimony as to the purpose for which the indorsement was placed on the note, the facts about which they both agree appear to be these :

After the note was made by the Association, and indorsed by the payee, it was left with the defendant, as the treasurer of the corporation, with the understanding that it should be discounted, and after deducting certain charges due the Association, the balance of the proceeds to be paid over to Meise, the payee of the note. The plaintiff had been in the habit of procuring notes of a similar character to be discounted at the instance of the defendant, for a certain commission ; and in this instance he was applied to by the defendant to get the note discounted, and for that purpose the note was placed in his hands, without any other indorsement than that of the payee. Finding some difficulty in procuring discount of

the note, the plaintiff returned to the defendant and informed him that it was necessary that he, the defendant, should put his name on the note, in order, as the defendant testifies, to his receiving the money, the product of the discount, and for that purpose alone ; though the plaintiff swears that the indorsement was made to give additional security to the note. Whereupon the note was indorsed by the defendant, and again placed in the hands of the plaintiff to be negotiated. The plaintiff then passed the note to a Mrs. Aberle, without any indorsement of his own, and, the note being for $500, received from her $480, which he paid over to the defendant, less a commission of one per cent. It appears that the money obtained from Mrs. Aberle was not obtained by regular discount and upon the credit of the note ; but the plaintiff pledged his own individual responsibility for the money, and the note was passed as collateral security only. As we have already stated, the money not being paid at the maturity of the note, the note was duly protested for non-payment, and notice given the indorsers. After this, instead of bringing suit against the parties to the note, suit was brought by Mrs. Aberle against the plaintiff on his separate undertaking for the re-payment of the money, and judgment being recovered for the amount, he paid it, when the note was returned to him by Mrs. Aberle, through her attorney. And the sole question is, whether the plaintiff is such holder of the note as entitles him to recover on the indorsement of the defendant ?

In an action by the holder of negotiable paper against the immediate indorser, the title of no innocent third person intervening, it is always competent to the defendant to show, by parol evidence, either the want or failure of consideration as between himself and the plaintiff, or that the indorsement was procured by fraud, or that it was made upon some special trust, or for a special purpose, as to an agent to enable him to use the paper or the money in some

particular way, or to make collection, or have the paper discounted, for the benefit of the principal; or that the note was indorsed and delivered to the plaintiff to be used only upon some express condition that has not been complied with. In these and similar instances, the parol evidence is admitted to show the absence of any valid or sufficient consideration for the alleged liability of the defendant to the plaintiff, and its admission violates no principle established for the protection of third persons as *bona fide* holders of negotiable paper. *Ricketts vs. Pendleton*, 14 *Md.*, 320; 2 *Pars. N. & B.*, (*1st Ed.*,) 518 *to* 522, *inclusive*; 1 *Dan. Neg. Ins., p.* 536, *secs.* 721, 722, and cases there cited.

The principle controlling in the instances just stated is not only applicable to this case, but quite decisive of it, upon the assumption of the truth of the defendant's evidence. Upon that assumption, the plaintiff certainly acquired no title to the note by the indorsement of the defendant. Nor did the subsequent facts of his raising the money on his own credit, simply using the note as collateral security, and his being required to pay the money and take up the note, invest him with such title, as against the defendant, as to afford a right of action on the indorsement. If he had advanced the money himself, instead of obtaining it on his credit, with the note as collateral security, he could not, if the defendant's evidence be true, maintain the position of a *bona fide* holder as against the defendant; and the manner of his obtaining the money, and subsequent payment of it, did not constitute him a purchaser of the note, and clothe him with the right and title of the party with whom the note had been deposited as collateral security, and thus bring his case within the principle of *Boyd vs. McCann*, 10 *Md.*, 118. Upon his repaying the money and obtaining the note, he occupied the position that he would have occupied if he had advanced the money on the note himself, and that

position gave him the rights of holder only as against the maker and the first indorser ; supposing the defendant to have indorsed the note for the purpose and under the circumstances stated by him.

All this, however, is said upon the assumption that the defendant's evidence be adopted to the exclusion of that given by the plaintiff. The latter states that the defendant indorsed the note for the purpose of giving it additional credit, and thus facilitating its negotiation; and not, as the defendant states, for the simple purpose of enabling the latter to receive the money. If this should be found to be the fact, then the plaintiff's right of action would be good as against the defendant, as well as against the maker and first indorser. This being a question of fact, it should have been submitted to the jury; and as it was not so submitted, by any of the prayers granted, it follows that the judgment appealed from must be reversed.

In the first prayer granted on the part of the plaintiff there was no error of which the defendant can complain. It required the jury to find that notes of a similar character to that in suit were regarded by the commercial community as promissory notes, as a fact to determine the nature of the note in question. This was quite unnecessary ; the nature and qualities of the note being matter of law for the Court to determine ; but the submission of the fact to the jury did not in any manner operate to the prejudice of the defendant.

The plaintiff's next prayer, designated as the fourth, which was granted, is defective in placing the defendant's liability on a guaranty instead of an ordinary indorsement. The payee had indorsed the note, and if the defendant subsequently indorsed it for the purpose of adding credit to the note, and thus aiding in the negotiation of it, he must be taken as a second indorser, and not a guarantor. This is the legal import of a blank indorsement, under such circumstances. 1 *Dan. Neg. Ins., p.* 534, *sec.* 719.

We think the defendant's first prayer should have been granted. It was based upon the evidence given by the defendant himself, and if that should be found to be in accordance with the truth of the transaction, it will necessarily negative the evidence given by the plaintiff; and, in that event, as we have said, the defendant will have made good his defence.

In view of what we have said of the whole case, the defendant's second prayer, which was also refused, may be regarded as immaterial in the final decision of the question involved.

*Judgment reversed,*
*and new trial awarded.*

(Decided 26th March, 1878.)